IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JASON LEOPOLD and BLOOMBERG, L.P., | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) Civil Action No. 1:22-cv-03009-JMC |
| UNITED STATES DEPARTMENT OF JUSTICE, *et al.*, | ) ) ) |
| Defendants. | ) ) ) ) |

## DECLARATION OF JOSEPH E. BENDER, JR.

I, Joseph E. Bender, Jr., declare as follows:

1. I am the Assistant Section Chief (ASC) of the Record/Information Dissemination Section (RIDS), Information Management Division (IMD), Federal Bureau of Investigation (FBI), Winchester, Virginia, and, in the absence of RIDS Section Chief, Michael G. Seidel, I serve as Acting Section Chief for RIDS. I have held the position since December 2020. I joined the FBI in October 2003, and prior to my current position, I was the Acting ASC from June 2020 to December 2020; Unit Chief, RIDS National Security Unit from January 2017 to June 2020; and an Assistant General Counsel (2003-2006) and Unit Chief (2006-2017), FBI Office of the General Counsel (OGC), National Security and Cyber Law Branch. In those capacities, I provided legal support to operational units of the FBI's National Security Branch. Prior to my joining the FBI, I served as a trial attorney in the U.S. Department of Justice, Tax Division, Southern Criminal Enforcement Section. In that role, I participated in federal criminal enforcement litigations. I am an attorney licensed in North Carolina and the District of Columbia.

2. In my official capacity as ASC of RIDS, I supervise approximately 238 FBI employees, supported by approximately 91 contractors, who staff a total of nine (9) Federal Bureau of Investigation Headquarters (FBIHQ) units and two (2) field operational service center units whose collective mission is to effectively plan, develop, direct, and manage responses to requests for access to FBI records and information pursuant to the Freedom of Information Act (FOIA) as amended by the OPEN Government Act of 2007, the OPEN FOIA Act of 2009, and the FOIA Improvement Act of 2016; the Privacy Act (PA) of 1974; Executive Order 13526; Presidential, Attorney General, and FBI policies and procedures; judicial decisions; and Presidential and Congressional directives. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

3. Through the exercise of my official duties, I have become familiar with this civil action, the FBI's coordination of responses with other government agencies, and the underlying requests from Plaintiff Jason Leopold, dated August 15, 2022, directed to the Office of the Director of National Intelligence (ODNI); dated August 17, 2022, directed to the United States Department of Justice (DOJ) Office of Information Policy (OIP)[1]; and dated August 19, 2022, directed to the DOJ National Security Division (NSD). Those requests each sought the production of:

---

[1] OIP is responsible for processing FOIA requests seeking records from within OIP and from six senior leadership offices of the DOJ, specifically the Offices of the Attorney General, Deputy Attorney General, Associate Attorney General, Legal Policy, Legislative Affairs, and Public Affairs. *See* www.justice.gov/oip/oip-foia.

> A copy of the "standing order" that former President Trump had[2] while he was still president that authorized him to take sensitive or classified records from the Oval Office to his residence. To be clear, once these sensitive or classified records were removed from the Oval Office the records were deemed to be declassified.

4. Plaintiff defined the "Standing Order" with reference to a statement reportedly made by former President Trump that he "had a standing order that documents removed from the Oval Office and taken to the residence were deemed to be declassified." Plaintiff's FOIA Requests, ECF No. 1-1, Exhibits 5 and 9, ECF No. 14-2, Exhibit 2.

5. As discussed in submissions before the United States District Court for the Southern District of Florida, the FBI has an active criminal investigation concerning the potential improper removal and storage of classified information in unauthorized spaces, as well as the potential unlawful concealment or removal of government records. Accordingly, the FBI, in consultation with Special Counsel Smith's office,[3] coordinated with ODNI, OIP, and NSD as to their responses to Plaintiff's requests to ensure that the integrity of the investigation was appropriately protected. *See In Re Sealed Search Warrant*, Case No. 22-MJ-8332 (S.D. Fla.).

6. As a result of that coordination, and based on the FBI's determination that confirming or denying the existence of responsive records, could, in itself, reasonably be

---

[2] Plaintiff resubmitted his August 15, 2022, request to ODNI on August 19, 2022, changing the word "received" to "had." Plaintiff resubmitted his August 17, 2022, request to OIP on August 19, 2022, changing the word "received" to "had." Plaintiff's FOIA Requests, ECF No. 1-1, Exhibit 9, ECF No. 14-2, Exhibit 2.

[3] The office referenced here is the office of Special Counsel Jack Smith, appointed by Attorney General Merrick Garland on November 18, 2022. *See* https://www.justice.gov/opa/pr/appointment-special-counsel-0.

expected to interfere with its investigation, ODNI, OIP, and NSD each issued a *Glomar*[4] response to Plaintiff in response to his August 15, 2022, August 17, 2022, and August 19, 2022, FOIA requests. They each explained that this determination was made in coordination with the FBI, and that confirmation that they have or do not have responsive records would be tantamount to acknowledging the existence or nonexistence of aspects of an ongoing investigation that the FBI has not previously acknowledged. They further explained that the FBI had advised: 1) if the requested records exist, they would be relevant to the FBI's ongoing investigation, and 2) confirmation as to the existence or nonexistence of such records could reasonably be expected to interfere with the ongoing investigation.

7. This declaration is being submitted in support of Defendants' Motion for Partial Summary Judgment in the above-captioned matter.

## THE FBI'S DUAL LAW ENFORCEMENT AND INTELLGENCE MISSIONS

8. The FBI's mission is to "[p]rotect the American people and uphold the Constitution of the United States." *See* the FBI's mission statement at http://www.fbi.gov/about/mission. The FBI's mission priorities include protecting the United States from terrorist attacks; protecting the United States against foreign intelligence, espionage, and cyber operations; combating significant cybercriminal activity; combating public corruption at all levels; protecting civil rights; combating transnational criminal enterprises; combating significant white-collar crime; and combating significant violent crime. *Id.* Pursuant to 28 U.S.C.

---

[4] The phrase "*Glomar* response" stems from a case in which a FOIA requester sought information concerning a ship named the *Hughes Glomar Explorer*, and the CIA refused to confirm or deny its relationship with the *Glomar* vessel because to do so would compromise the national security or divulge intelligence sources and methods. *Phillipi v. CIA*, 655 F.2d 1325 (D.C. Cir. 1981). *Glomar* responses are proper "if the fact of the existence or nonexistence of agency records falls within a FOIA exemption." *Wolf v. C.I.A.*, 473 F.3d 370, 374 (D.C. Cir. 2007).

§§ 533–534, and Executive Order 12,333 as implemented by the Attorney General's Guidelines for Domestic FBI Operations (AGG-DOM) and 28 C.F.R. § 0.85, the FBI is the primary investigative agency of the federal government with authority and responsibility to investigate all violations of federal law not exclusively assigned to another agency, to conduct investigations and activities to protect the United States and its people from terrorism and threats to the national security, and to further the foreign intelligence objectives of the United States.

## *GLOMAR* RESPONSES TO PLAINTIFF'S FOIA REQUESTS

9. The FBI relies on *Glomar* responses in instances where even acknowledging the existence or nonexistence of responsive records would result in harm protected against by one or more FOIA exemptions. To be credible and effective, the FBI must use the *Glomar* response in all similar cases regardless of whether responsive records exist, including in instances in which the FBI does not possess any records responsive to a particular request. If the FBI issued a *Glomar* response only when it actually possessed responsive records, the *Glomar* response would itself be an admission that the responsive records exist.

10. As noted above, the ODNI, OIP, and NSD, in coordination with the FBI, issued *Glomar* responses to Plaintiff's FOIA requests, refusing to confirm or deny the existence of responsive records. These responses were based on the FBI's determination, made in consultation with Special Counsel Smith's office, that merely acknowledging the existence or non-existence of records responsive to Plaintiff's requests reasonably could be expected to interfere with its ongoing investigation, triggering the harm against which FOIA Exemption (b)(7)(A) protects.

## APPLICABILITY OF EXEMPTION (b)(7)(A)

### Exemption (b)(7) Threshold

11. Before an agency can invoke any of the harms enumerated in Exemption (b)(7), it must first demonstrate that the records or information at issue were compiled for law enforcement purposes. As explained above, the FBI is the primary investigative agency of the federal government with authority and responsibility to investigate all violations of federal law not exclusively assigned to another agency, to conduct investigations and activities to protect the United States and its people from terrorism and threats to national security, and to further the foreign intelligence objectives of the United States.

12. Plaintiff's requests seek a copy of the alleged "Standing Order." Assuming the existence of the record requested by Plaintiff, such record would be part of the ongoing criminal investigation described in paragraph 5 above, concerning the potential improper removal and storage of classified information in unauthorized spaces, as well as the potential unlawful concealment or removal of government records. For example, the existence or non-existence of the alleged "Standing Order" would bear on whether records with apparent classification markings were in fact classified—a key fact in the investigation. That investigation is within the law enforcement duties of the FBI, and therefore, any records compiled as part of that investigation would be compiled for law enforcement purposes.

### Exemption (b)(7)(A)

13. FOIA Exemption (b)(7)(A) protects "records or information compiled for law enforcement purposes [when disclosure] could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A).

14. In addition to satisfying Exemption (b)(7)'s threshold, an agency must establish that (a) there is a pending or prospective law enforcement proceeding and (b) disclosure of responsive records could reasonably be expected to adversely affect it.

15. As explained above, the alleged "Standing Order," if it were to exist, would relate to the FBI's ongoing investigation described above. While the FBI's investigation into this matter has been officially acknowledged, the existence or non-existence of the alleged "Standing Order," or whether Defendants have such an order, has not been officially acknowledged, nor has any evidence the investigation has developed with regard to its existence or non-existence been officially acknowledged.

16. If evidence regarding the existence or nonexistence of the alleged "Standing Order" were disclosed at this stage of the FBI's investigation, such a disclosure could reasonably be expected to hamper and interfere with the pending investigation. This is because confirmation or denial of whether ODNI, OIP, and/or NSD has the alleged "Standing Order" would disclose facts gathered during the course of the pending investigation that might lead persons of interest to alter their testimony; destroy, adulterate, or fabricate evidence; or refuse to cooperate with the government altogether. Any testimony gathered after the disclosure could thus be tainted, since each person the FBI interviewed thereafter would have the opportunity to mold his or her statements in light of the prematurely disclosed evidence. More than that, confirmation or denial of the existence or non-existence of responsive records would provide those intent on interfering with the investigation additional pieces of information necessary to target their behaviors to maximize the effect of any efforts to undermine the investigation. This, in turn, reasonably could be expected to severely hamper the FBI's ability to ascertain the truth and, assuming there was a violation of the law, for the matter to be successfully prosecuted.

17. Therefore, a *Glomar* response to the Plaintiff's requests in this case is justified under FOIA Exemption (b)(7)(A).

## CONCLUSION

18. For all the reasons explained herein, the *Glomar* responses issued by the ODNI, OIP, and NSD, in coordination with the FBI, are justified under Exemption (b)(7)(A). Additionally, for all the reasons stated above, the FBI reasonably foresees that disclosing whether or not the alleged "Standing Order" exists, and whether or not Defendants have it, would harm the interests protected by Exemption (b)(7)(A).

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 3rd day of March 2023.

JOSEPH E. BENDER, JR.
Assistant Section Chief
Record/Information Dissemination Section
Information Management Division
Federal Bureau of Investigation
Winchester, Virginia